IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY I. UDELL,

        **Plaintiff,**

v.                                         CIV 04-100 LAM

JO ANNE B. BARNHART,
Commissioner, Social Security Administration,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 8)*.  In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case.  The Court has reviewed Plaintiff's motion *(Doc. 8)*, the memorandum in support *(Doc. 9)*, Defendant's response to the motion *(Doc. 10)*, Plaintiff's reply to the response *(Doc. 11)*, and relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record, (hereinafter *"Record"* or *"R"*).  For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") **AFFIRMED.**

## I.  Procedural History

On May 1, 2001, Plaintiff, Gary I. Udell, filed applications for Disability Insurance Benefits and Supplemental Security Income.  *(R. at 67-69, 257-259)*.  In connection with his applications, he alleged a disability since December 15, 2000 due to a hearing loss, ADHD (attention deficit

hyperactivity disorder), and developmental delays.  *(R. at 98)*.  Plaintiff's applications were denied

at the initial and reconsideration levels.  *(R. at 39, 41-45; 40, 48-51)*.

An administrative law judge (hereinafter "ALJ") conducted a hearing on August 13, 2002.

*(R. at 265-303)*.  Plaintiff was present and testified at the hearing.  *(R. at 265-303)*.  Plaintiff was

represented by counsel at the hearing.  *(R. at 265)*.  A vocational expert also testified at the hearing.

*(R. at 265, 296-301)*.  On October 11, 2002, the ALJ issued his decision in which he found the

Plaintiff was not disabled at step four of the five-step sequential evaluation process set forth in 20

C.F.R. § 404.1520, § 416.920.  *(R. at 16-20)*.  The ALJ made the following findings, *inter alia*, with

regard to Plaintiff:  (1) claimant is insured for benefits through the date of this decision; (2) claimant

has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has

"severe" impairments pursuant to the requirements in 20 C.F.R. §§ 404.1521, 416.921;[1] (4) these

medically determinable impairments do not meet or medically equal one of the listed impairments; (5)

claimant's allegations regarding his limitations are not totally credible; (6) all medical opinions in the

record were carefully considered regarding the severity of claimant's impairments; (7) claimant has

the residual functional capacity (hereinafter "RFC") for simple, unskilled work[2] with close supervision

and limited public contact, and with an environment accommodating his hearing loss; he has no

physical impairment or exertional restrictions; (8) claimant's past relevant work as a fast food worker

---

[1]The ALJ found that Plaintiff had the severe impairments of an organic mental disorder and
impaired hearing. (*R. at 17*).  Under relevant Social Security regulations, an impairment is "severe"
if it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R.
§§ 416.921, 404.1521.

[2]Unskilled work is work which needs little or no judgment to do simple duties that can be
learned on the job in a short period of time.  The job may or may not require considerable strength.
20 C.F.R. §§ 404.1568, 416.968.

did not require the performance of work-related activities precluded by his residual functional capacity; (9) claimant's medically determinable organic mental disorder and impaired hearing do not prevent the claimant from performing his past relevant work or other jobs identified by the vocational expert witness; (10) claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. *(R. at 19-20)*.

After the ALJ issued his decision on October 11, 2002, Plaintiff filed a request for review with the Appeals Council. *(R. at 8)*. On December 30, 2003, the Appeals Council issued its decision denying the request for review *(R. at 5-7)*, making the ALJ's decision of October 11, 2002 the final decision of the Commissioner. On January 29, 2004, Plaintiff filed his complaint in this action. *(Doc. 1)*.

## II. Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see*

*also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214.

A claimant has the burden of proving his or her disability *(Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)), which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Secretary has established a five-step process for evaluating a disability claim.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920.  *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988).  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity (hereinafter "RFC"), age, education, and prior work experience.  *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience, and Medical History

At the time of the hearing, Plaintiff was twenty-eight years old *(R. at 269)* and, therefore, is defined as a "younger person."  (20 C.F.R. § 404.1563(c)).  Plaintiff completed high school and took some special education classes in combination with regular classes.  *(R. at 104, 273)*.  During the

4

fifteen-year period prior to the ALJ's decision, Plaintiff worked in the fast food industry as a cook, delivery driver, and counterman. *(R. at 107).* Plaintiff also worked as a stock boy in a grocery store and cleaned golf carts at a country club. *(Id.).*

Plaintiff provided educational records indicating periodic evaluations to determine his continued eligibility for special education services. *(R. at 143, 147, 150, 164, 167, 234).* These evaluations indicated that Plaintiff required speech and language therapy for impairments that were perhaps the result of his hearing loss. *(R. at 143-144, 148).* A consistent feature of these evaluations was that Plaintiff exhibited impulsiveness, a lack of motivation, no incentive to improve, and no apparent interest in school beyond socializing, thereby potentially affecting the accuracy of the testing. *(R. at 145, 147-149, 153, 169).*

The only medical records pertaining to the period prior to his applications for Social Security benefits that Plaintiff provided were three trips to the emergency room for minor ailments (strep throat, a cold and ear pain, and groin pain) *(R. at 182, 183-188, 189-194, 199-205)* and a neurological consultation performed in 1995 *(R. at 195-197).* The neurological consult and examination appears to have been conducted in Arizona by D. D. Duane, M.D. on May 9, 1995. *(R. at 195-197).* Dr. Duane diagnosed Plaintiff with a "[d]evelopmental language disorder secondary to peripheral hearing loss, mild and well compensated, 315.3; minor right hemispheric dysfunction with mainly mnemonic dysfunction, 348.3; daytime hypersomnia [3], 347." *(R. at 197).* Dr. Duane

---

[3]Hypersomnia is a condition in which sleep periods are excessively long, but the person responds normally in the intervals. *Stedman's Medical Dictionary* 855 (27th ed., Lippincott Williams & Wilkins 2000).

expressed the hope that Plaintiff's mnemonic[4] functioning and alertness could be improved medicinally and prescribed Cylert.[5]  *(Id.)*.

On October 30, 2001, Carl P. Adams, Ph.D. conducted a consultative psychiatric examination of Plaintiff at the request of New Mexico Disability Determination Services[6] (hereinafter "DDS"). *(R. at 206-210)*.  Dr. Adams noted a history of multiple medical problems, related by the Plaintiff and his mother, including being born with hearing and heart problems that were surgically treated.  *(R. at 208)*.  Plaintiff was interviewed and given the Wechsler-Adult Intelligence Scale (WAIS-III) and the Wide Range Achievement Test (WRAT-III). *(R. at 206, 208-209)*.  Plaintiff's Full Scale IQ score of 75 placed him in the borderline range intellectually.  *(R. at 209)*.  Plaintiff's Verbal IQ was 72 and his Performance IQ was 83.  *(Id.)*.  Dr. Adams noted that Plaintiff's "[c]ognitive abilities are inconsistently developed and clearly indicative of learning disabilities.  How much in his hearing deficits contribute to this is not known at this time.  It should be noted that Garry [sic] does not wear hearing aids."  *(Id.)*.  Dr. Adams diagnoses indicated that Plaintiff had a learning disorder (with a note to rule out attention deficit hyperactivity disorder), a personality disorder, and a hearing disorder with multiple medical complaints.  *(Id.)*.

---

[4]Mnemonic (synonymous with anamnestic) is assisting the memory.  *Stedman's Medical Dictionary* 69, 1122 (27th ed., Lippincott Williams & Wilkins 2000).

[5]There are two drugs listed under Cylert and the Court is unable to determine which was prescribed to Plaintiff.  Cylert (pemoline) is an oral drug used to treat attention deficit hyperactivity disorder (ADHD) by stimulating the brain.  Cylert (modafinil) is an oral drug used for improving wakefulness in patients with excessive sleepiness.  The effect of modafinil is similar to caffeine in that it promotes wakefulness by stimulating the brain.  *MedicineNet.com.*

[6]Disability Determination Services is the state agency with which the Social Security Administration has contracted to develop the medical record in Social Security claims at the initial and reconsideration levels.  *See* 20 C.F.R. § 404.1519s.

On October 31, 2001, Dr. Adams completed a Psychiatric-Psychological Source Statement of Ability To Do Work-Related Activities for Plaintiff.  *(R. at 211-213)*.  Dr. Adams found that Plaintiff had the following limitations[7]: (1) in understanding and remembering instructions, Plaintiff was mildly limited in detailed or complex instructions, but he was not limited in very short and simple instructions; (2) in sustained concentration and task persistence, Plaintiff was mildly limited in his ability to work without supervision, but he was not limited in his ability to carry out instructions, or in his ability to attend and concentrate; (3) in social interactions Plaintiff was mildly limited in his ability to interact with the public but not limited in his ability to interact with coworkers and supervisors; (4) in adaptation Plaintiff was not limited in his abilities to adapt to changes in the workplace,  his ability to be aware of normal hazards and react appropriately, or his ability to use public transportation or travel to unfamiliar places; and (5) Dr. Adams indicated he had no knowledge of any problems with alcohol or substance abuse.  *(R. at 211-212)*.  Dr. Adams also indicated that Plaintiff could not manage benefits in his own best interest, but failed to explain why.  *(R. at 212-213)*.

On November 8, 2001, a state agency physician completed a mental residual functional capacity assessment of Plaintiff.  *(R. at 216-219)*.  The state agency physician found that Plaintiff had

---

[7]On this form, Social Security Administration definitions are included as follows:
"Not limited" - the mental disorder does not affect the ability to perform this activity.
"Mildly limited" - the effects of the mental disorder do not significantly limit the individual from consistently and usefully performing the activity.
"Moderately limited" - the evidence supports the conclusion that the individual's capacity to perform the activity is impaired but the degree/extent of the impairment needs to be further described.
"Markedly limited" - the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity.
*(R. at 211)*.

moderately limited abilities in understanding and remembering detailed instructions, maintaining attention and concentration for extended periods, making simple work-related decisions, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in the work setting, and setting realistic goals or making plans independently of others. *(R. at 216-217)*.  There were no significant limitations in Plaintiff's abilities to remember locations and work-like procedures, understand, remember, and carry out very short and simple instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, and travel in unfamiliar places or use public transportation. *(Id.)*.  On February 2, 2002, a second state agency physician affirmed these findings. *(R. at 218)*.

Also on November 8, 2001, a state agency physician completed a psychiatric review technique form (hereinafter PRTF) for Plaintiff. *(R. at 220-233)*.  This assessment placed Plaintiff's mental impairment in the category of 12.02 Organic Mental Disorders *(R. at 220)* as defined in the Social Security Listings of Impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02.  Organic Mental Disorders are psychological or behavioral abnormalities associated with a dysfunction of the brain, but the physician indicated Plaintiff had a medically determinable impairment that did not precisely

satisfy the diagnostic criteria.  *(R. at 221)*.  In rating Plaintiff's functional limitations under the "B" criteria of the Listings, the state physician found Plaintiff had: (1) mild limitations in restrictions of daily living, (2) moderate limitations in difficulties in maintaining social functioning, (3) moderate limitations in difficulties in maintaining concentration, persistence, or pace, and (4) no repeated episodes of decompensation.  *(R. at 230)*.  The evidence did not establish the presence of "C" criteria.[8] *(R. at 231)*.  This PRTF was affirmed by a second agency physician on February 1, 2002. *(R. at 220)*.

On May 29, 2002 and June 5, 2002, Brenda L. Wolfe, Ph.D. conducted two psychological clinical interviews with Plaintiff at his attorney's request.  *(R. at 236)*.  Based on these clinical interviews and a review of Plaintiff's records (Plaintiff's academic evaluations, medical notes by D. D. Duane, M.D., the psychiatric examination by Dr. Adams, a work history report and daily activities questionnaire prepared by Plaintiff and his mother, and a third party daily activities questionnaire), Dr. Wolfe proposed a diagnosis of Autistic Disorder.  *(R. at 239)*.  Dr. Wolfe found "a strong fit

---

[8]The "C" criteria in the Organic Mental Disorders category require the "[m]edically documented history of a chronic organic mental . . . disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support" and one of the following:  repeated episodes of decompensation, each of extended duration; a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.02.

between the diagnostic criteria [for Autistic Disorder] and Mr. Udell's documented developmental history and current presentation." *(R. at 238)*. Dr. Wolfe also noted that

> [a]lthough individuals with Borderline intellectual functioning can typically maintain some level of gainful employment, Mr. Udell's interpersonal and communication deficits place him in a more problematic category that [sic] those afflicted only with limited intellectual prowess. Mr. Udell has poor judgment, poor social and communication skills, and is not sufficiently "connected" to the world to generate the interest (motivation) to attempt to change any of that.

*(R. at 238)*. Dr. Wolfe's diagnoses of Plaintiff included Autistic Disorder, Intermittent Explosive Disorder, Borderline Intellectual Functioning, Hearing deficit, boredom, and a Global Assessment of Functioning (hereinafter GAF) score of 41. *(R. at 239)*.

In completing a PRTF for Plaintiff, Dr. Wolfe indicated Plaintiff met the Listing for 12.10, Autism and Other Pervasive Developmental Disorders. *(R. at 240)*. In assessing Plaintiff's qualitative deficits, Dr. Wolfe found Plaintiff had qualitative deficits in reciprocal social interaction, qualitative deficits in verbal and nonverbal communication and in imaginative activity, and a markedly restricted repertoire of activities and interests. *(R. at 249)*. Dr. Wolfe also found Plaintiff had marked functional limitations in activities of daily living and maintaining concentration, persistence, or pace; and extreme functional limitations in maintaining social functioning. *(R. at 250)*. A Medical Assessment of Ability To Do Work-Related Activities (Mental), partially completed by Dr. Wolfe, indicated Plaintiff had marked or severe limitations in almost all categories including understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *(R. at 254-255)*.

## IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step four of the five-part sequential analysis for determining disability.  At step four, the ALJ's duty is one of inquiry and factual development. *Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 356, 361 (10th Cir. 1993) *quoting Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987).  It is not the ALJ's duty to be claimant's advocate; instead, claimant continues to bear the burden of showing that his impairment renders him unable to perform his past relevant work.  *Andrade v. Sec'y of Health & Human Services,* 985 F.2d 1045, 1050 (10th Cir. 1993).

Plaintiff alleges the ALJ made four errors in denying his claim for benefits and that there is new and material evidence that requires a remand.  *(Plaintiff's Memorandum, Doc. 9, p. 1)*. Specifically, Plaintiff asserts that:  (1) the ALJ failed to properly analyze and consider lay testimony, (2) the ALJ's residual functional capacity assessment of Plaintiff's mental abilities was unsupported by substantial evidence, (3) the ALJ failed to follow administrative regulations in finding that claimant could perform his past relevant work, and (4) the ALJ's hypothetical questions to the vocational expert (hereinafter "VE") were not based on substantial evidence.  *(Id.)*.  The new and material evidence offered to the Court is a psychological evaluation conducted by Eligio R. Padilla, Ph.D. on December 17, 2003.  *(Id. at p. 3-7; Plaintiff's Memorandum, Doc. 9, Exhibit A)*.  Plaintiff asks the Court to reverse and remand this case for a new hearing.  Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

### A.  New and Material Evidence

Plaintiff argues that the psychological evaluation conducted by Eligio R. Padilla, Ph.D. on December 17, 2003, after the ALJ's decision on October 11, 2002, is new and material evidence that warrants a remand of this case for a new hearing.  (*Plaintiff's Memorandum, Doc. 9, pp. 5-7*). Dr. Padilla's evaluation of Plaintiff was <u>not</u> submitted to the Appeals Council, and on December 30, 2003 the Appeals Council denied Plaintiff's request for a review of the ALJ's decision.  *(R. at 5-7)*.

On judicial review of a Commissioner's decision, the Court is generally confined to the record before it.  But the Court may remand a case, "order[ing] additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; . . . "  42 U.S.C. § 405(g).  "In order to find a remand appropriate, we normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before [her]."  *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir. 1991) (citation omitted); *see also Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  "Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied."  *Hargis*, 945 F.2d at 1493.  In *Heimerman v. Chater*, the requirements for introduction of additional evidence is summarized as:

> (1) the proffered evidence must be 'new' and not merely cumulative of what is already in the record; (2) the proffered evidence must be material, that is, relating to the time period for which benefits were denied; and offering a reasonable possibility of changing the [Commissioner's] decision; and (3) the claimant must show good cause for the failure to obtain and present the evidence at the prior hearing.

*Heimerman v. Chater*, 939 F. Supp. 832, 833-34 (D. Kan. 1996) *citing Tirado v. Bowen*, 842 F.2d 595, 597 (2nd Cir. 1988).

Plaintiff argues that Dr. Padilla's evaluation is evidence that is "both new and material and not cumulative as Defendant alleges but rather clarifying and supportive of the evidence examined by the ALJ." *(Plaintiff's Reply, Doc. 11, p. 6)*. However, Plaintiff's specific arguments are based on claims that Dr. Padilla's evaluation *confirms* the earlier evaluations of Dr. Wolfe and Dr. Adams. *(Plaintiff's Memorandum, Doc. 9, p. 6)*. For example, Plaintiff states that "Dr. Padilla confirmed Dr. Adams' speculation that the claimant was suffering ADHD . . ." and "Dr. Wolfe, like Dr. Padilla[,] was also of the opinion that the claimant retained only borderline intellectual functioning," and "Dr. Padilla found nearly identical mental functional limitations as Dr. Wolfe in her report." *(Id.)*.

Dr. Padilla also administered the WAIS-III test and found Plaintiff to have the following IQ scores: Full Scale IQ 78, Verbal IQ 76, and Performance IQ 83. *(Plaintiff's Memorandum, Doc. 9, Exhibit A, p. 3)*. There are only minimal differences between these IQ scores and the IQ scores found by Dr. Adams (Full Scale IQ 75, Verbal IQ 72, Performance IQ 83). *(R. at 209)*. All three psychological examiners agreed that Plaintiff suffered from borderline intellectual functioning. (Padilla in *Plaintiff's Memorandum, Doc. 9, Exhibit A, p. 4;* Adams at *R. 209*; and Wolfe at *R. 239*). Dr. Padilla noted that Plaintiff "continues to be treated for ADHD" (*Plaintiff's Memorandum, Doc. 9, Exhibit A, p.4*) and Dr. Adams indicated that Plaintiff should be checked and ADHD ruled out as a diagnosis *(R. at 209)*. The issues of Plaintiff's IQ scores, borderline intellectual functioning and possible ADHD were all before the ALJ when his decision was made.

Dr. Padilla's evaluation of Plaintiff is not "new" in that the material import of his statements were contained in the earlier evaluations by Dr. Wolfe and Dr. Adams and that information was

submitted to the ALJ and to the Appeals Council and therefore, Dr. Padilla's evaluation is cumulative of evidence already in the record.  As such, the Court finds Dr. Padilla's evaluation is not new evidence for purposes of remand pursuant to the Social Security Act (42 U.S.C. § 405(g)) since this information is already part of the administrative record and, therefore, unlikely to change the Commissioner's decision.

## B.  Lay Testimony Analysis

Plaintiff alleges the ALJ failed to properly analyze and consider the lay testimony of Plaintiff's mother, father and former employer.  *(Plaintiff's Memorandum, Doc. 9, pp. 7-9)*.  Under Social Security regulations, the agency may use evidence from non-medical sources to assess the severity of a claimant's impairments and how the impairments affect the claimant's ability to work.  20 C.F.R, §§ 404.913(d), 404.1513(d).  These non-medical sources may include spouses, parents, caregivers, siblings, relatives, friends, neighbors, and clergy.  20 C.F.R, §§ 404.913(d)(4), 404.1513(d)(4).

Plaintiff's mother submitted an affidavit at the ALJ hearing and Plaintiff's former employer, Brian Hall, submitted a letter describing Plaintiff's work habits.  *(R. at 179-180, 177-178)*.  Plaintiff's father appeared at the hearing in person and testified.  *(R. at 265, 291-296)*.  In his decision, the ALJ specifically cites to former employer Brian Hall's letter indicating Plaintiff worked at Rudy's Barbeque for approximately two and one-half years, noting that Plaintiff got along well with coworkers and supervisors.  *(R. at 18)*.  The ALJ also considered Hall's opinion that Plaintiff's lack of initiative and need to be constantly reminded about routine tasks, as well as attendance problems, were the reasons for his eventual termination.  *(Id.)*.

The ALJ considered Plaintiff's mother's letter and his father's testimony in combination, noting that their view of their son's intellectual functioning was "disproportionate to the level of his

actual IQ functioning." *(R. at 18)*.  The ALJ also noted that Plaintiff's parents failed to recognize Plaintiff's "lack of initiative, interest and motivation throughout his life." *(Id.)*.  Obviously, the ALJ's comment that Plaintiff "has functioned below his capabilities and has developed a dependence on his parents to do things that he could do for himself" indicates a rejection of the parents' testimony. *(Id.)*.

In *Adams v. Chater*, the Tenth Circuit stated that it is clear that an ALJ considered the testimony of a lay witness in making his decision when the ALJ specifically referred to the testimony in his written opinion.  *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) ("We decline claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility, particularly where the written decision reflects that the ALJ considered the testimony.");  *see Standlee v. Barnhart*, 2005 WL 256560 *3 (10th Cir. (N.M.)) (unpublished).  The Court finds that the ALJ clearly considered the lay testimony of Plaintiff's former employer and his parents as indicated by his discussion of the testimony in his written decision.

### C.  Mental Residual Functional Capacity Assessment

Plaintiff alleges that the ALJ's residual functional capacity assessment of Plaintiff's mental abilities was unsupported by substantial evidence.  *(Plaintiff's Memorandum, Doc. 9, pp. 10-15)*.  Plaintiff argues that the ALJ failed to properly consider lay evidence *(R. at 11-12)*,  that the ALJ ignored the work ability assessments of Dr. Wolfe and Dr. Adams *(R. at 12)*, and that the evaluation performed by Dr. Padilla provides a "more succinct assessment of Mr. Udell's ability to function in the work place." *(R. at 13)*.

When a claimant suffers from a severe mental impairment that is not severe enough to meet the requirements of a listed impairment at step three of the sequential analysis, the ALJ must assess

the claimant's mental RFC.  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).  The ALJ must assess

a claimant's mental RFC in accordance with 20 C.F.R. §§ 404.1545(c) and 416.945(c) which require

the ALJ to determine if the claimant has a limited ability to carry out mental activities in the

workplace such as "limitations in understanding, remembering, and carrying out instructions, and in

responding appropriately to supervision, co-workers, and work pressures in a work setting."  The

ALJ's RFC assessment must include a narrative discussion that describes how the evidence supports

his conclusions, discusses the claimant's "ability to perform sustained work activities in an ordinary

work setting on a regular and continuing basis," and describes "the maximum amount of each work-

related activity the individual can perform based on the evidence available in the case record."  *Social

Security Ruling 96-8p*, 1996 WL 374184, at \*7.  The ALJ "must also explain how any material

inconsistencies or ambiguities in the evidence in the case record were considered and resolved." (*Id.*).

In this case, the ALJ discussed how he reviewed Plaintiff's special education evaluations

during his school years and the difficulty in fully evaluating them due to Plaintiff's "lack of interest,

motivation and cooperation with the diagnosticians." *(R. at 17)*.  The ALJ reviewed Plaintiff's former

employer's  letter indicating Plaintiff had worked well with co-workers and supervisors, but lacked

initiative and had to be constantly reminded to complete tasks.  *(R. at 18)*.  The testimony of

Plaintiff's father and his mother's affidavit, regarding Plaintiff's dependence on them, were discounted

by the ALJ due to the parents' lack of recognition that their "view of their son's intellectual

functioning . . . is disproportionate to the level of his actual IQ functioning." *(Id.)*.

The ALJ discussed the consultative psychological evaluation performed by Dr. Wolfe, but

assigned her opinions little probative value because "the degree and severity of the claimant's mental

limitations stated by Dr. Wolfe cannot be reconciled with the claimant's actual level of functioning."

*(Id.)*.  The ALJ notes that he carefully considered Dr. Wolfe's evaluation together with a balance of

the evidence, but found her "diagnosis of an autistic disorder . . . problematical, and [that it] requires

some speculation as to certain aspects of the claimant's early history.  Moreover, her findings as to

Mr. Udell's level of functioning is wholly inconsistent with his overall daily living."  *(R. at 18-19)*.

In determining the weight given to a psychological consultant's findings, an ALJ uses the same factors

as when evaluating a treating physician's opinions (20 C.F.R. 404.1527 (e)(2)(ii)[9]); however, ALJ's

decision is not bound by findings made by such psychological consultants (20 C.F.R. 404.1527

(e)(2)(i).  An ALJ must give good reasons in the decision for the weight he assigns a medical

opinion.  20 C.F.R. § 404.1527(d)(2).

      The ALJ also discussed the consultative psychological evaluation conducted by Dr. Adams.

*(R. at 18)*.  Dr. Adams diagnosed Plaintiff with a learning disorder and a personality disorder.  *(Id.)*.

The ALJ notes that

> [s]ignificantly, Dr. Adams makes *no objective finding of any mental or emotional
> problem that would impact his mental capacity to perform those jobs in the fast food
> industry that he had worked at over the years.*  This is made doubly clear in the
> Psychological Source Statement attached to his report (Exhibit 3 F, p.6).  In this
> summary, he states that *Mr. Udell is no more than mildly impaired in any area of
> work activity.  He is able to carry out instructions and attend and concentrate, with
> only a mild limitation in doing so without supervision.*  [emphases added]

*(Id.)*.  The ALJ states that after consideration of all the evidence and testimony he accepted the

findings of opinions of Dr. Adams and the analysis of the DDS medical consultants.  *(R. at 19)*.

      Finally, the psychological evaluation performed by Dr. Padilla and submitted to this Court

after the ALJ's decision cannot be considered in reviewing the ALJ's decision.  As noted above, new

---

[9]The factors used to evaluate a treating physician's opinion include the examining relationship, the treatment relationship, supportability of the opinion, consistency, and specialization.  20 C.F.R. 404.1527 (d)(1-5).

evidence in support of a claim cannot be introduced at the district court level; such evidence can be presented to the court only as a basis for a remand.  42 U.S.C. § 405(g).

The ALJ discussed the Plaintiff's mental impairments and functional limitations as evidenced by his school records, work history, the lay opinions of his former employer and his parents, agency consultant opinions, the psychiatric review technique forms, and the medical opinions of Dr. Wolfe and Dr. Adams.  The ALJ properly documented his reasons for discounting the opinion of Dr. Wolfe and accepting the opinion of Dr. Adams.  The Court finds that the ALJ properly analyzed Plaintiff's mental RFC.

## D.  Past Relevant Work

At step four, the relevant analysis is whether Plaintiff is able to return to his past relevant work.  This analysis includes three phases.  First, the ALJ must evaluate Plaintiff's physical and mental residual functional capacity ("RFC").  *See e.g., Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  Second, the ALJ must determine the physical and mental demands of Plaintiff's past relevant work.  *Id.*; 20 C.F.R. § 404.1520(e).  Finally, the ALJ must determine whether Plaintiff has the ability to meet the job demands found in the second phase despite the mental and/or physical limitations found in phase one.  *Winfrey*, 92 F.3d at 1023 *citing, inter alia, Henrie v. United States Dep't of Health & Human Services*, 13 F.3d 359, 361 (10th Cir. 1993).  At step four, the claimant "bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy."  *Andrade v. Secretary of Health & Human Services,* 985 F.2d 1045, 1051 (10th Cir. 1993).

Plaintiff alleges the ALJ failed to consider evidence pertaining to the functional limitations identified by Dr. Wolfe and Dr. Adams when analyzing whether Plaintiff could return to his PRW.

18

*(Plaintiff's Memorandum, Doc. 9, p. 16)*.  Plaintiff admits the ALJ had information on the demands

of Plaintiff's past jobs, but failed to analyze which of those demands would be affected by Plaintiff's

developmental disabilities.  *(Id. at 16-17)*.  Finally, Plaintiff alleges the ALJ ignored the fact that, in

the past, Plaintiff was unable to hold a job for a significant period.  *(Id. at 17-18)*.

In his decision, the ALJ noted, Plaintiff "has no physical or exertional impairment, and he has

the physical capacity for work at any exertional level.  He has a mild hearing loss that impacts slightly

on the range of work that he can do, but he is able to hear sufficiently well that he can converse and

carry on normal conversations and understand and hear instructions in a work environment."  *(R. at*

*17)*.  At the hearing, the ALJ questioned Plaintiff regarding his hearing loss and established that

Plaintiff could hear one-on-one conversations and that Plaintiff did not wear hearing aids.  *(R. at 272)*.

The ALJ discounted Dr. Wolfe's opinions and assigned them little probative value and therefore, did

not consider them in his evaluation.  *(R. at 18)*.  Dr. Adams found only mild functional limitations

in Plaintiff's mental abilities, as the ALJ notes in his decision, Dr. Adams "states that Mr. Udell is no

more than mildly impaired in any area of work activity.  He is able to carry out instructions and attend

and concentrate, with only a mild limitation in doing so without supervision."  *(R. at 18)*.

The ALJ did not ignore Plaintiff's alleged inability to hold a job for extended periods, as the

ALJ found  Plaintiff's "failures in life" were "directly related to lack of initiative, motivation, and a

disinterest in the requirements of daily living activities."  *(R. at 19)*.  The ALJ also noted that Plaintiff

had the capacity for gainful work as evidenced by his work at Rudy's Barbeque for approximately

two and one-half years.  *(R. at 17, 18)*.  The ALJ analyzed Plaintiff's RFC as discussed above and

found that Plaintiff "retains the residual functional capacity for simple, supervised, entry level work

that does not require close contact with the public.  He is limited to working where there is no excessive noise and where acute hearing is not required."  *(R. at 19)*.

The ALJ also asked the vocational expert to give a vocational assessment of Plaintiff's past relevant work.  *(R. at 297)*.  Based on Plaintiff's testimony and the record, the vocational expert stated that the food server, deli clerk and fast food cook positions were unskilled and light.  *(Id.)*. The vocational expert stated that the cleaning of golf carts, busing, dry cleaner, and delivery positions were unskilled and medium level work.  *(Id.)*.

Based on Plaintiff's RFC, the testimony of a vocational expert, and the evidence in the record, the ALJ found that Plaintiff could return to his past relevant work as a fast food worker as previously performed by Plaintiff.  *(R. at 19, 20)*.  The Court finds that Plaintiff failed to meet the burden of establishing his inability to perform his past relevant work *(see Andrade*, 985 F.2d at 1051) and that the ALJ's finding was supported by substantial evidence in the record.

### E.  Hypotheticals to Vocational Expert

Plaintiff alleges the ALJ erred in failing to include all of Plaintiff's limitations, specifically the "marked" and "severe" limitations found by Dr. Wolfe and Plaintiff's borderline intellectual functioning, in the hypothetical questions posed to the vocational expert at step five.  *(Plaintiff's Memorandum, Doc. 9, pp. 18-20)*.  However, the ALJ found Plaintiff not disabled at step four by finding that Plaintiff's impairments did not prevent him from returning to his past relevant work.  *(R. at 20)*.  At step four, an ALJ need not use VE testimony when the issue is whether the claimant can return to his past relevant work.  *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995).

The information provided to the VE in hypothetical questions must accurately reflect all of the claimant's impairments.  "Testimony elicited by hypothetical questions that do not relate with

precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). A vocational expert's testimony can provide substantial evidence to support the ALJ's findings only if the hypothetical question presented to the vocational expert adequately reflects the state of the record. *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *Hargis*, 945 F.2d at 1492. In making the step four finding, the ALJ relied on the testimony of the VE to provide a vocational assessment of Plaintiff's past relevant work. *(R. at 297)*. The VE based her assessment on Plaintiff's testimony and the vocational record, finding Plaintiff's past work as a food server, deli clerk and fast food cook to be unskilled and light. *(Id.)*. She also stated that the cleaning of golf carts, busing, dry cleaner, and delivery positions were unskilled and medium. *(Id.)*.

While an ALJ must include, in hypothetical questions, all of a claimant's limitations that are supported by the record , the ALJ discounted Dr. Wolfe's opinions because they were speculative and inconsistent with Plaintiff's daily activities and, therefore, the ALJ was not required to include them. *See Shepard v. Apfel*, 184 F.3d 1196, 1203 (10th Cir. 1999); *Gay v. Sullivan,* 986 F.2d 1336, 1340-1341 (10th Cir. 1993). The ALJ accepted the clinical findings and opinions of Dr. Adams and agreed with the analysis of the medical consultants for DDS. *(R. at 19)*. Dr. Adams' testing of Plaintiff indicated a Full Scale IQ score of 75 which placed him in the borderline range intellectually. *(R. at 209, 210)*. However, Dr. Adams found only mild limitations in Plaintiff's ability to understand and remember detailed or complex instructions, work without supervision, and interact with the public. *(R. at 211-213)*. The DDS consultants found only moderate limitations, as noted above, and stated "[i]t seems he is capable of work with basic instructions and not much contact with the public." *(R. at 216-218)*.

Plaintiff relies on *Johns v. Barnhart*, Civil No. 03-302 LAM (D. N.M. 2004) to argue that "borderline intellectual functioning is a significant non-exertional impairment that must be considered by a vocational expert" and that the ALJ erred in not including it in the hypothetical questions to the VE. *Johns* at 16. The court in *Johns* and *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997) held that a VE must consider the impairment of borderline intellectual functioning; however, the instant case is distinguishable because both *Johns* and *Lucy* were decided at the fifth step where the burden of proof shifts to the Commissioner. *Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988). Also in *Johns*, the Plaintiff's borderline intellectual functioning was determined after the hearing and that information was unavailable to the VE at the time she gave her opinions. *Johns* at 16. In this case, the information on Plaintiff's borderline intellectual functioning was included in the medical reports prior to the hearing and the ALJ carefully articulated Plaintiff's mental limitations, as described by Dr. Adams, in the hypothetical question to the VE. *(R. at 297-298)*. The ALJ questioned the VE as follows:

> If we were to consider hypothetically a person of the age, educational background, and the experience of the Claimant, and we were to find that this individual had no particular physical limitations, but because of other considerations was limited to very simple work with basic instructions - - this individual has mild limitations in detailed or complex instructions, the ability to work without supervision, and in the interaction with public, individual also has a hearing problem. He's capable of hearing, but needs to work in a job that does not require acute hearing, or instructions as to work processes that are delivered in an oral manner. In other words, not instructed orally. It's more of a show-and-tell and repeat kind of instruction. With those kinds of limitations, would the individual be able to do any of the past relevant work that you've indicated?

*(R. at 297-298)*.

The ALJ found Plaintiff not disabled at step four and, therefore, further evaluation was unnecessary. *See Bartlett v. Heckler*, 777 F.2d 1318, 1319 (8th Cir. 1985). However, the ALJ had

the VE also identify other jobs existing in significant numbers in the economy that Plaintiff could perform and included an alternative step five finding in the decision. *(R. at 19, 20)*.  The integrity of a step four finding of no disability is not compromised by recognition that step five, if it had been reached, would have dictated the same result.  *Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir. 1994).

The Court finds that the hypothetical questions posed by the ALJ accurately reflected Plaintiff's impairments and limitations as supported by the record and that the VE's testimony constituted substantial evidence upon which the ALJ properly relied.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 8)* is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**